UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES S.,[1]

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

DECISION & ORDER

22-CV-0227MWP


**PRELIMINARY STATEMENT**

Plaintiff James S. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Supplemental Security Income and Disability Insurance Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 11).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 9). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## BACKGROUND

On March 19, 2015, plaintiff filed for SSI/DIB, alleging disability beginning on November 13, 2014, due to stroke, high blood pressure, high cholesterol, diabetes type 2, upper back problems, and limited use of his left arm. (Tr. 160, 164, 180, 203).[2] On May 26, 2015, the Social Security Administration ("SSA") denied plaintiff's claims for benefits, finding that he was not disabled. (Tr. 71-72). Plaintiff requested and was granted a hearing before an administrative law judge (Tr. 111), which occurred on April 25, 2017 (Tr. 36-70). In a decision dated January 31, 2018, Administrative Law Judge Bryce Baird (the "ALJ") found that plaintiff was not disabled and was not entitled to benefits. (Tr. 11-26). On November 8, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-4). Plaintiff then sought judicial review of the Commissioner's decision. (Tr. 663-78). On July 22, 2020, this Court issued a decision remanding plaintiff's claim on the grounds that the ALJ failed to consider the December 18, 2017 opinion authored by plaintiff's treating physician assistant, Gary Wysocki, RPA-C. (*Id.*).

On August 10, 2020, the Appeals Council remanded plaintiff's claims for further proceedings consistent with this Court's Decision and Order. (Tr. 680-83). On October 5, 2021, the ALJ held a hearing on plaintiff's remanded claims. (Tr. 601-35). In a partially favorable decision dated November 30, 2021, the ALJ found that plaintiff was not disabled prior to January 9, 2020, and was not entitled to benefits prior to that date. (Tr. 574-91). The ALJ also found

---

[2] The administrative transcripts (Docket ## 6, 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

that beginning on January 9, 2020, plaintiff was disabled pursuant to Medical-Vocational Rule 201.12.  (*Id.*).  On March 18, 2022, plaintiff commenced this action seeking review of the Commissioner's decision.  (Docket # 1).

## DISCUSSION

**I.        Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

3

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

   (1)   whether the claimant is currently engaged in substantial gainful activity;

   (2)   if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

   (3)   if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

>   (4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and
>
>   (5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.   **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 13, 2014, the alleged onset date. (Tr. 577). At step two, the ALJ concluded that plaintiff had the severe impairments of: "history of cerebral vascular accident ("CVA") with left-sided weakness; coronary artery disease with history of two heart attacks (and subsequent third); and uncontrolled diabetes mellitus." (*Id.*). The ALJ also found that plaintiff suffered from hypertension and high cholesterol, but that these impairments were not severe. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 577-78).

The ALJ concluded that prior to January 9, 2020, plaintiff retained the RFC to perform light work, including carrying twenty pounds occasionally and ten pounds frequently,

5

standing and walking for up to six hours during the workday and sitting for up to six hours during the workday.[3] (Tr. 578-89). The ALJ found, however, that plaintiff could not be exposed to workplace hazards, climb ladders, ropes, or scaffolds, crawl, or operate left hand controls or left foot controls. (*Id.*). He also limited plaintiff to only occasional balancing, stooping, kneeling, crouching, climbing of ramps and stairs, reaching with his left arm, and handling and fingering with his left hand. (*Id.*). At steps four and five, the ALJ found that plaintiff had no past relevant work but, based on plaintiff's age, education, work experience, and RFC prior to January 9, 2020, that other jobs existed in significant numbers in the national economy that he could perform, such as usher, stock checker, and cafeteria attendant. (Tr. 589-90). Accordingly, the ALJ found that plaintiff was not disabled prior to January 9, 2020. (Tr. 590).

   The ALJ also found that beginning on January 9, 2020, plaintiff's RFC was limited to a reduced range of light work. (Tr. 591). Based upon the vocational expert's testimony that a hypothetical person with plaintiff's RFC would be limited to sedentary jobs, the ALJ concluded that pursuant to Medical Vocational Rule 201.12, plaintiff was disabled as of January 9, 2020. (*Id.*).

   In evaluating plaintiff's RFC prior to January 9, 2020, the ALJ considered and weighed the medical opinions of four different physicians. (Tr. 580-88). Consultative examiner Abrar Siddiqui, MD, performed a neurologic evaluation of plaintiff on May 11, 2015. (Tr. 372-75). Siddiqui assessed that plaintiff had moderate limitations in pushing, pulling, and carrying heavy objects, primarily due to his left-handed weakness following his stroke on

---

[3] In the decision, the ALJ indicated that plaintiff retained the RFC to perform light work "except that he could carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours and sit for 6 hours in an 8-hour workday." (Tr. 578). "Light work requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, stand and walk for up to 6 hours a day, and sit for up to two hours." *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) (summary order) (citing 20 C.F.R. § 404.1567(b) and SSR 83-10, 1983 WL 31251, *5-6 (Jan. 1, 1983)).

November 12, 2014. (*Id.*). The ALJ gave "some weight" to Siddiqui's opinion, noting that the report contained some inconsistencies. (Tr. 587). According to the ALJ, Siddiqui observed that plaintiff had full grip strength in both hands, but ultimately assessed limitations due to left-handed weakness. (*Id.*).

On June 17, 2015, non-examining consultative physician James Kelly, DO, reviewed plaintiff's medical records and Siddiqui's opinion and concluded that plaintiff was capable of light work with certain limitations.[4] (Tr. 73-81). Specifically, Kelly assessed that plaintiff was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and walking for up to six hours during the workday, and sitting for up to six hours during the workday. (*Id.*). In addition, Kelly assessed that plaintiff was unlimited in his ability to reach in all directions, but was limited in his ability to handle and finger with his left hand. (*Id.*). The ALJ gave "some weight" to Kelly's opinion, but disagreed that plaintiff had no limitations in reaching, concluding that that portion of the opinion was inconsistent with medical evidence documenting that plaintiff had limited range of motion in his left shoulder. (Tr. 587).

Consultative examiner David Brauer, MD, performed an internal medicine examination of plaintiff on August 9, 2017. (Tr. 559-68). Brauer assessed that plaintiff did not have any limitations in his ability to sit, stand, walk, climb, push, pull, lift, or carry objects. (*Id.*). According to Brauer, plaintiff was able to continuously lift up to twenty pounds, frequently lift up to fifty pounds, and occasionally lift up to 100 pounds. (*Id.*). Brauer opined that plaintiff could sit up to eight hours at a time and for a total of eight hours during the workday. (*Id.*). In addition, he assessed that plaintiff could stand and walk up to four hours at a time, could stand

---

[4] As recognized by the ALJ, the limitations contained in the opinion were assessed by a single decision-maker at the administrative level and adopted by Kelly. (Tr. 73-81, 587). Due to the inconsistent objective findings contained in Siddiqui's evaluation, Kelly also recommended that plaintiff undergo a neurologically-focused examination to determine the extent of his ability to perform fine motor activities with his left hand. (Tr. 77).

for up to five hours in a workday, and could walk for up to four hours in a workday.  (*Id.*). Brauer opined that plaintiff was able to continuously reach, handle, finger, feel, push, and pull with both arms and could operate foot controls with both feet.  (*Id.*).  According to Brauer, plaintiff was capable of continuously stooping, kneeling, crouching, crawling, and climbing stairs, ramps, ladders, and scaffolds, but was limited to occasionally engaging in activities requiring balance.  (*Id.*).  The ALJ gave "some weight" to Brauer's opinion.  (Tr. 588). According to the ALJ, although the limitations assessed by Brauer were consistent with his largely "unremarkable" physical examination, the ALJ determined that plaintiff's physical capacities had significantly improved since his onset date.  (*Id.*).

The ALJ also considered and weighed two medical opinions provided by plaintiff's treating physician's assistant, Gary C. Wysocki, RPA-C.  (Tr. 587-88).  On February 18, 2015, Wysocki completed an employability assessment relating to plaintiff ("Wysocki's 2015 opinion").  (Tr. 363-64).  Wysocki opined that plaintiff was "very limited" in his ability to walk, stand, lift or carry, push, pull, bend, climb, and use his hands.  (*Id.*).  According to Wysocki, plaintiff did not have any limitations in his ability to sit, see, hear, or speak.  (*Id.*). Wysocki opined that plaintiff's limitations were the result of plaintiff's 2014 stroke.  (*Id.*).  The ALJ's gave this opinion "some weight," but noted that it was provided only three months after plaintiff's stroke and before plaintiff had completed occupational therapy.  (Tr. 587-88). According to the ALJ, Wysocki's treatment notes did not contain any findings suggesting that plaintiff suffered from musculoskeletal or neurological defects that would limit his ability to stand or walk.  (*Id.*).  In addition, the ALJ noted that plaintiff indicated in his testimony that the only ongoing limitation caused by his stroke was residual weakness in his left arm.  (*Id.*).

On December 18, 2017, Wysocki completed another employability assessment form relating to plaintiff ("Wysocki's 2017 opinion"). (Tr. 917-18). Wysocki opined that plaintiff was "very limited" in his ability to walk, stand, lift or carry, push, pull, bend, use his hands, or climb. (*Id.*). According to Wysocki, plaintiff had no limitations in his ability to sit, see, hear, or speak. (*Id.*). Once again, Wysocki indicated that plaintiff's limitations were caused by residual effects of his stroke. (*Id.*). The ALJ gave "little weight" to this opinion. (Tr. 588). According to the ALJ, the limitations assessed by Wysocki were not supported by the objective evidence contained in Wysocki's treatment notes, which only documented residual weakness in plaintiff's left arm. (*Id.*). In addition, the ALJ noted that Wysocki had not treated plaintiff for the previous several months prior to completing the form. (*Id.*).

### III.   Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he was not disabled prior to January 9, 2020, is not supported by substantial evidence and is the product of legal error. (Docket ## 8-1, 10). Plaintiff maintains that the ALJ, by giving no more than "some weight" to each of the medical opinions, in effect, rejected the medical opinion evidence and rendered an RFC determination based on his own lay interpretation of the medical evidence. (*Id.*).

### IV.   Analysis

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities,

symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)[5]).  Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see also Colgan v. Kijakazi*, 22 F.4th 353, 360 (2d Cir. 2022) ("[p]ut another way, the rule requires the ALJ to defer to the treating physician's opinion when making disability determinations if the opinion is supported by reliable medical techniques and is not contradicted by other reasonable evidence in the administrative record"); *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted).  Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to

---

[5] This regulation applies to claims filed before March 27, 2017.  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider the "*Burgess* factors":

(1) the frequency of examination and length, nature, and extent of the treatment relationship,

(2) the amount of medical evidence supporting the opinion,

(3) the consistency of the opinion with the record as a whole,

(4) whether the opinion is from a specialist, and

(5) whatever other factors tend to support or contradict the opinion.

*Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022) ("[e]ven though this list of considerations is established by regulation, we discussed them at length in *Burgess v. Astrue*, . . . and so they are sometimes referred to as the '*Burgess* factors'"); *see also Estrella v. Berryhill*, 925 F.3d at 95 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). "At both steps, the ALJ must 'give good reasons in [the] notice of determination or decision for the weight [he] gives the treating source's medical opinion.'" *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d at 32) (internal brackets omitted); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good reasons' for not crediting the

11

opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations and quotations omitted). "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Plaintiff is correct that the ALJ did not assign controlling weight to any of the five opinions assessing plaintiff's limitations in reaching the pre-January 9, 2020 RFC determination. (*See* Tr. 587-88). As discussed above, the ALJ assigned "some weight" to Siddiqui's, Kelly's and Brauer's opinions and Wysocki's 2015 opinion. (*Id.*). The ALJ also gave "little weight" to Wysocki's 2017 opinion. (Tr. 588).

Here, plaintiff does not contend that the ALJ erred in evaluating any specific opinion in the record. Rather, based solely on the fact that the ALJ discounted the weight of each of these opinions, plaintiff maintains that the ALJ "relied on his own interpretation of the raw medical data to craft the RFC." (Docket # 8-1 at 14). In plaintiff's view, because the ALJ gave "some weight" to each of the medical opinions in the record, "the ALJ rejected every available opinion[,] . . . [and] it is unclear precisely where the limitations set forth in the RFC came from and why they did not go further." (*Id.* at 20).

Simply because the ALJ did not assign controlling weight to any opinion does not mean that he "rejected" the medical opinion evidence in the record. Indeed, an ALJ does not

necessarily "reject" opinion evidence by according it less than controlling weight, especially where, as here, the ALJ's RFC determination incorporates limitations contained in that opinion.[6] *See, e.g.*, *Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *3 (W.D.N.Y. 2019) ("[c]ontrary to [claimant's] assertion, the ALJ did not wholly reject [the doctors'] opinions; instead, she afforded them 'partial' and 'some' weight and . . . relied on portions of them to determine [claimant's] RFC[;] . . . [j]ust because the ALJ did not afford either opinion controlling weight does not mean that she substituted her own view of the medical evidence for those opinions"); *see also Harris v. Berryhill*, 2017 WL 4112022, *3 (W.D.N.Y. 2017) ("[p]laintiff contends that the ALJ improperly 'rejected' [doctors'] opinions [which the ALJ afforded 'less than significant weight'] without citing to another medical opinion[;] [p]laintiff overstates the ALJ's actions[;] [t]he ALJ did not 'reject' these opinions[;] [t]o the contrary, he gave them some weight and incorporated certain of the limitations set forth therein into his RFC finding"); *Bockeno v. Comm'r of Soc. Sec.*, 2015 WL 5512348, *5 (N.D.N.Y. 2015) ("the ALJ did not outright reject [doctor's] opinion, but afforded his opinion 'little weight'[;] [t]he ALJ's RFC determination

---

[6] Irrespective of the terminology used by the ALJ, whether it be "great weight," "little weight," "some weight," or "no weight," the relevant inquiry is whether the ALJ in fact incorporates or accounts for the limitations assessed by the medical professional in the RFC, as opposed to basing the RFC upon his or her own lay interpretation of the medical evidence. *Compare Freeman v. Comm'r of Soc. Sec.*, 2019 WL 2016585, *4 (W.D.N.Y. 2019) (RFC not supported by substantial evidence where ALJ gave "little weight" to the only medical opinion of record and failed to account for resting and lifting limitations assessed in the opinion); *Nanartowich v. Comm'r of Soc. Sec. Admin.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (ALJ's discounting of medical opinions of record created evidentiary gap in the record; "the ALJ explicitly accorded 'little weight' to the opinions [of the physicians], . . . and nothing suggests that the ALJ accounted for the limitations identified by these physicians in formulating the RFC"); *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) ("[a]fter discounting the opinions, the ALJ determined that [plaintiff] retained the physical RFC to perform the full range of light work[;] . . . it is unclear how the ALJ arrived at this RFC or which impairments he considered in formulating his assessment"); *Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (RFC not supported by substantial evidence where "[a]fter discounting [the physician's] opinion," the ALJ formulated the RFC "through her own interpretation of various MRIs and x-ray reports contained in the treatment records") *with Burch v. Comm'r of Soc. Sec.*, 2019 WL 922912, *6 (W.D.N.Y. 2019) ("[a]lthough the ALJ accorded limited weight to both opinions, her RFC assessment nonetheless accounts for the majority of the limitations assessed by both doctors"); *Harrington v. Colvin*, 2015 WL 790756, *17 (W.D.N.Y. 2015) (same); *Crawford v. Astrue*, 2014 WL 4829544, *21 (W.D.N.Y. 2014) ("the ALJ's RFC assessment adopted the limitations assessed by [the physician] that were supported by the evidence and . . . his decision to afford [the physician] limited weight did not create a gap in the record").

includes non-exertional mental limitations, some of which are consistent with the limitations imposed by [doctor] and supported by other medical evidence in the record").

My review of the record reveals that the ALJ reached an RFC determination that is consistent with and incorporates many aspects of the opinion evidence. With the exception of Wysocki, none of the physicians opined that plaintiff was unable to perform the exertional requirements of light work. Indeed, Brauer assessed no limitations in plaintiff's ability to sit, stand, walk, push, pull, and lift or carry, while Siddiqui opined that plaintiff would have only moderate limitations in pushing, pulling or carrying heavy objects. Similarly, Kelly opined that plaintiff was capable of the exertional requirements of light work. The ALJ accorded these opinions "some weight" and assessed an RFC that was consistent with those opinions by limiting plaintiff to light work. *See*, *e.g.*, *Nelson v. Colvin*, 2014 WL 1342964, *12 (E.D.N.Y. 2014) ("the ALJ's determination that [p]laintiff could perform 'light work' is supported by [consultative examiner's] assessment of 'mild to moderate limitation for sitting, standing, walking, bending, and lifting weight on a continued basis'").

Moreover, considering Wysocki's opinions, which assessed limitations in plaintiff's ability to push, pull, bend, climb, and use his hands, along with Kelly's opinion that plaintiff was limited in his ability to handle and finger with his left hand, the ALJ assessed additional limitations, including postural limitations and limitations on plaintiff's use of his left hand, such as limiting him to only occasional reaching, handling and fingering with his left hand and eliminating any requirement that he operate foot or hand controls using his left hand or foot. (Tr. 588). Contrary to plaintiff's argument that the ALJ failed to explain how he resolved inconsistent opinion testimony concerning plaintiff's ability to reach, handle, and finger (Docket # 8-1 at 19), the ALJ repeatedly explained that the medical records contained objective findings

of ongoing weakness and range of motion limitations in plaintiff's left arm. (Tr. 581-82, 584, 587-88). Additionally, the ALJ noted plaintiff's own testimony that he continued to experience left arm weakness as a result of his stroke. (Tr. 588). Indeed, the ALJ explicitly disagreed with Kelly's opinion that plaintiff did not have any limitations in his ability to reach, concluding it was inconsistent with medical evidence concerning plaintiff's limited range of motion in his left shoulder. (Tr. 587). I find that the ALJ, rather than relying on his own lay judgment, "carefully and thoughtfully discussed the medical opinion evidence and only accepted so much of it as was consistent with the medical evidence overall." *Carmen P. v. Saul*, 2021 WL 795312, *4 (W.D.N.Y. 2021) (brackets omitted). In other words, the ALJ did precisely what he "was supposed to do." *Id.*; *see Lori M. v. Comm'r of Soc. Sec.*, 2021 WL 230916, *4 (W.D.N.Y. 2021) ("although his RFC determination did not adopt any one opinion, the ALJ appropriately and thoughtfully addressed and balanced each opinion in formulating the RFC[;] . . . his detailed reasoning enabled the [c]ourt to understand, review, and assess his findings").

        I likewise reject plaintiff's contention that the ALJ's determination that plaintiff retained the ability to meet the standing and walking requirements of light work was a "highly specific" finding that lacked record support. (Docket # 8-1 at 20-21). In his decision, the ALJ concluded that plaintiff retained the ability to stand or walk for up to six hours of an eight-hour workday. (Tr. 578). Contrary to plaintiff's contention, the ALJ's conclusion was supported by the opinions of both Brauer and Kelly. As noted above, Kelly assessed that plaintiff was capable of standing and/or walking for a total of six hours of an eight-hour workday. (Tr. 79). Similarly, Brauer opined that plaintiff did not have any limitations in his ability to stand or walk. (Tr. 562). According to Brauer, plaintiff was able to stand for up to five hours and walk for up to four hours during any given workday. (Tr. 564). These opinions support the ALJ's conclusion that plaintiff

15

was capable of the standing and walking requirements of light work.  Moreover, the ALJ explained the basis for his determination concerning plaintiff's ability to stand and walk: the treatment notes did not contain any objective findings suggesting that plaintiff had any "limitations in standing or walking."  (Tr. 587).

On this record, I find that the ALJ appropriately based his RFC determination on record evidence, including the several opinions in the record, and did not base the RFC upon his own lay interpretation of the medical evidence.  I also find, for the reasons stated above, that the ALJ's RFC determination is otherwise supported by substantial evidence.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole"); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (the ALJ is "not require[d] . . . [to] mention[] every item of testimony presented to him or . . . explain[] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").  Thus, remand is not warranted.

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of SSI/DIB was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED**.  Plaintiff's

16

motion for judgment on the pleadings **(Docket # 8)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                      *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                    United States Magistrate Judge

Dated:  Rochester, New York
          August 28, 2024